524 P.2d 638 (1974)
HORIZON LAND CORPORATION and United States Fidelity and Guaranty Company, Petitioners,
v.
INDUSTRIAL COMMISSION of Colorado et al., Respondents.
No. 73-465.
Colorado Court of Appeals, Div. I.
June 25, 1974.
Duane O. Littell, Denver, for petitioners.
John P. Moore, Atty. Gen., John E. Bush, Deputy Atty. Gen., Peter L. Dye, *639 Asst. Atty. Gen., for respondent Industrial Commission.
Selected for Official Publication.
SMITH, Judge.
Petitioners, Horizon Land Corporation and United States Fidelity and Guaranty Company, appeal from a final order of the Industrial Commission holding that benefits for permanent total disability due claimant, Rick D. Hobson, were the responsibility of the employer and not the subsequent injury fund under C.R.S. 1963, 81-12-7. We reverse.
The facts in this case are undisputed. In 1967, prior to his obtaining employment with Horizon Land Corporation, the claimant's right leg was amputated below the knee. The claimant wore a prosthesis which permitted him adequate mobility in his job. The compensable injury was the result of an automobile accident which occurred on April 13, 1972, while claimant was acting in the course of his employment. Claimant suffered an injury to the thoracic spine resulting in total paraplegia below the waist. The evidence disclosed by medical reports and testimony from the claimant's physician is uncontradicted and clearly establishes that this subsequent accident would have been "totally and permanently disabling even if the [right] leg were still present."
On the basis of this evidence the commission found that the claimant was not entitled to any compensation from the subsequent injury fund and, pursuant to the provisions of C.R.S. 1963, 81-12-8(1), ordered the petitioners to pay compensation both for loss of the remaining leg and for total permanent disability as well.
The issue presented here is one of first impression involving the construction of C.R.S. 1963, 81-12-7. That statute states, in pertinent part:
"(1)(a) When an employee has previously suffered the loss, or total loss of use of one hand, one arm, one foot, one leg, or the vision of one eye, and as a result of an accident arising out of and in the course of his employment he suffers the loss of, or the total loss of the use of, another hand, arm, foot, leg, or the vision of an eye, the loss of the second member shall prima facie constitute total and permanent disability as defined in section 81-12-8, but the employer, or his insurance carrier, if any, shall be liable only for the compensation payable for the member lost in the second accident.
"In addition to such compensation and after the completion of the payments therefor, the employee shall continue to receive compensation at his established compensation rate until death out of a special fund to be known as `subsequent injury fund' . . . ."
By interpretation of this statute, we must determine from what source total and permanent disability compensation is payable where an employee, who previously has lost a leg, becomes totally paralyzed below the waist as a result of a subsequent compensable accident.
The respondents argue that because the subsequent accident would independently have caused permanent total disability regardless of the prior loss of the claimant's right leg, the employer should be liable for not only the statutorily prescribed compensation for loss of a bodily member but also for the payment of permanent total disability benefits. Acceptance of this argument would require that we equate a previously disabled employee with an able-bodied employee when considering an employer's liability for permanent total disability. To do so would be inconsistent with what we believe to be the legislative intent of the statute.
To understand the legislative intent which prompted the enactment of C.R.S. 1963, 81-12-7, it is necessary to look at the status of the law prior to the establishment of the subsequent injury fund. Before the fund was established, the last employer was responsible, not merely for the member lost by claimant while in his employment, but for the entire permanent total disability, resulting from the combination *640 of past and present injuries. See Industrial Commission v. State Insurance Compensation Fund, 71 Colo. 106, 203 P. 215.
Considering this prior status of the law, we find that the purpose of the statute here construed is to enhance the opportunities for employment for partially disabled persons. It seems logical to assume that if the rule were otherwise, employers would be reluctant to hire partially disabled employees because such employees are subject to a substantially increased likelihood of total permanent disability in the event of an industrial accident. We therefore conclude that the legislature intended, by enactment of this statute, to encourage employers to hire partially disabled persons by relieving them of any greater potential liability resulting therefrom.
In accord with our view of the issue here presented is Arview v. Industrial Commission, 415 I11. 522, 114 N.E.2d 698. In that case the claimant, prior to his second accident, had sustained permanent and complete loss of the sight to his right eye. The subsequent accident required the claimant to undergo multiple amputations. Construing a statute substantially the same as ours, the court there held that while the employer was liable for the specific injuries sustained in the second accident, the subsequent injury fund was responsible for the payment of the permanent total disability even though the second accident alone would have resulted in total disability.
Following the same rationale, we conclude that under C.R.S. 1963, 81-12-7, the employer is liable for the actual injuries and disability which occurs in his employment. However, in the case of an employee who has previously lost the use of an eye or one of the bodily members specified in the statute, the permanent total disability resulting from the loss of an additional member or additional members shall, after the employer has compensated the employee for such loss, be borne by the subsequent injury fund. Consistent with the above rule, we set aside the order.
There is no dispute in the evidence that the claimant had made a successful adjustment to the prosthesis on his right leg before the industrial accident here involved. There is likewise no dispute that because of the paraplegia caused by the subsequent accident he completely lost his ability to use the right leg. C.R.S. 1963, 81-12-4, which prescribes the measure of damages, for loss of, or loss of use of, a bodily member differentiates between the loss of a leg at the hip joint or so near thereto as to preclude the use of a prosthesis (208 weeks) and loss of a leg at or above the knee which remains sufficient to permit the use of a prosthesis (139 weeks). Equating the claimant's paraplegia with the loss of a leg at the hip joint and recognizing that the claimant prior to the accident in question had successfully used a prosthesis, we apply the statutory formula and conclude that the petitioners are liable for 69 weeks of compensation attributable to the right leg, being the difference between loss of the leg at the knee and total loss of the leg, in addition to the 208 weeks for the total loss of the left leg. Pursuant to the rule adopted here, after the payment by the employer and/or its insurer of compensation for a total of 277 weeks, further disability payments are to be made from the subsequent injury fund.
The order is set aside and the cause remanded for entry of an order consistent herewith.
PIERCE and RULAND, JJ., concur.