**CITY AND COUNTY OF DENVER and State Compensation Insurance Fund, Petitioners,**

v.

**INDUSTRIAL COMMISSION of the State of Colorado, Subsequent Injury Fund of the State of Colorado, and Harold W. Hatch, Respondents.**

No. 83SC166.

Supreme Court of Colorado, En Banc.

Oct. 15, 1984.

Kathleen W. Robinson, Denver, for petitioners.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Timothy R. Arnold, First Asst. Atty. Gen., Kathryn J. Aragon, Asst. Atty. Gen., Denver, for respondents Industrial Com'n of State of Colo. and Subsequent Injury Fund of State of Colo.

George T. Ashen, James E. Freemyer, Denver, for respondent Harold W. Hatch.

ROVIRA, Justice.

We granted certiorari to review an unpublished decision of the court of appeals affirming a decision of the Industrial Commission of Colorado (Commission). The court struck the Subsequent Injury Fund (SIF) as a party on the ground that it is not a legal entity which can sue or be sued. It ruled that section 8–53–106(2)(b), 3 C.R.S. (1982 Supp.), established the applicable standard of review, and that that part of the Commission's order which reversed the referee's order represented an ultimate conclusion of fact. It also held that in order to impose liability on the SIF, a condition of permanent total disability must be the result of a prior and subsequent industrial disability exclusive of nonindustrial physical conditions and disabilities. We affirm the court of appeals decision in all respects except that part striking the SIF as a party.

I.

Harold W. Hatch, the claimant, a 58-year-old employee of the City and County of Denver (Denver) for twelve years, injured his back while working on January 18, 1980. Hatch had sustained a series of employment-related back injuries for which he had undergone surgery beginning in 1960. As a result of these pre-1980 industrial accidents, he had received an award of eighteen percent permanent partial disability.

After the 1980 accident, Hatch took medical retirement and filed a claim against Denver seeking compensation for permanent and total disability. At the request of the claimant, without objection by Denver, SIF was joined as a party because of the claimant's prior history of industrial injuries. The attorney general represented the SIF.

At a hearing in August 1980, the evidence established that in addition to the industrial injuries Hatch also had glaucoma, arthritis, asthma, a history of alcohol abuse, and was obese. One medical expert was of the opinion that as a result of the 1980 accident Hatch was permanently disabled to the extent of twenty-five percent as a working unit. Another doctor did not believe that the 1980 accident would leave Hatch with any permanent disability, but because of his multiple medical problems he should be medically retired. He rated Hatch as twenty percent partially disabled as a working unit.

The hearing officer found that: (1) Hatch sustained an industrial accident in 1980; (2) he had previously sustained permanent partial industrial disability in an industrial accident and, combined with the permanent partial disability of twenty-five percent as a working unit sustained in 1980, he was rendered permanently and totally incapable of gainful employment. Based on these findings, he concluded that Denver and its insurance carrier, State Compensation Insurance Fund (SCIF), were liable for the disability related to the 1980 accident, and the SIF was responsible for paying to the claimant $214 per week for the rest of his life, such payments to commence after Denver and SCIF had paid a total of $20,802.50.

The SIF petitioned the Commission for review. It contended that the claimant had failed to demonstrate that his permanent total disability was solely the result of the combined industrial disabilities, and that there was insufficient evidence to support a finding of permanent total disability.

The Commission rejected the latter contention. It concluded that the industrial injuries suffered by the claimant plus his other infirmities established his permanent

total disability.[1] However, it then determined that pursuant to section 8–51–106(1)(a), 3 C.R.S. (1983 Supp.), the SIF was not liable for any payments because the claimant's permanent total disability was not caused exclusively by the industrial disabilities. Denver and SCIF were ordered to pay all compensation benefits to which the claimant was entitled.

Denver and SCIF appealed, naming the Commission, the claimant, and the SIF as respondents. The court of appeals on its own motion ordered the SIF stricken as a party on the ground that it is not a legal entity which can sue and be sued. *See Sears, Roebuck & Co. v. Baca,* 670 P.2d 1244 (Colo.App.1983), *aff'd in part, rev'd in part, Sears, Roebuck & Co. v. Baca,* 682 P.2d 11 (Colo.1984).

The court then held that the Commission's order finding the claimant permanently and totally disabled, but that such disability was not caused exclusively by the industrial accidents, was an ultimate conclusion of fact which the Commission was authorized to make pursuant to section 8–53–106(2)(b), 3 C.R.S. (1982 Supp.).[2] The court also agreed with the Commission that in order to impose liability on the SIF a condition of permanent total disability must be the result of a prior and a subsequent industrial disability, exclusive of nonindustrial physical conditions and disabilities.

Denver and SCIF petitioned for certiorari, which we granted in order to consider three issues: first, whether section 8–51–106(1)(a), 3 C.R.S. (1983 Supp.), precludes compensation by the SIF when nonindustrial factors contribute to the claimant's permanent disability; second, whether the Commission properly applied the statutory standard of review established by section 8–53–106(2)(b), 3 C.R.S. (1982 Supp.); third, whether, when only the SIF seeks review by the Commission of a hearing officer's order, a favorable ruling by the Commission may be upheld on appeal.

## II.

Since certiorari was granted, we have resolved the issue of the status of the SIF. In *Sears, Roebuck & Co. v. Baca,* 682 P.2d 11 (Colo.1984), we held that the SIF is not a legal entity but the Director of the Division of Labor is a proper party to represent the SIF and to safeguard its interests.[3] In light of our decision in *Sears,*

---

1. Although the hearing officer failed to acknowledge the existence of Hatch's many nonindustrial disabilities in his findings, it is uncontradicted and petitioners concede that Hatch suffered from numerous nonindustrial afflictions which contributed to his total disability. The Commission stated in its "Findings of Fact and Order":

> The claimant confirmed these separate health afflictions in his testimony; he stated that the reason he had not worked since the accident of January 1980 was because of the 'numerous problems that I have, in addition to this last one.' He elaborated that he had acquired glaucoma, and had arthritis in his back, in both knees and in one elbow. He had left mechanical work on police vehicles because of cataract surgery on both eyes with resulting inability to do that work. He also had carpal tunnel surgery in 1975 on both hands, a time in which he was also treated for chronic asthma which had commenced. A principal complaint was that from taking the drug Prednisone for asthma there is an irritation of the glaucoma. There had been little or no improvement in his obesity problem; he had never undertaken a weight loss pro-

gram, and had lost sixteen pounds since the accident in January 1980.

2. That part of the Commission's order which the court of appeals held represents "ultimate conclusions of fact" states:

> The evidence shows further, however, that the combined industrial disabilities themselves did not render the claimant permanently and totally disabled, incapable of steady gainful employment and incapable of rehabilitation to steady gainful employment. It is correct to state, and the Commission finds, that claimant was indeed permanently and totally disabled from gainful employment, but the permanent total disability was not caused exclusively by the 'combined industrial disabilities' described. Rather, the permanent total disability was caused by the injuries to the back plus the disabling effects of the claimant's several other bodily afflictions not connected with the back injuries and not caused by the back injuries.

3. In 1984, the General Assembly authorized the Director of the Division of Labor to administer and conduct all matters relating to the subsequent injury fund in the name of the division,

we answer the third question in the affirmative. In addition, we note that Denver and SCIF raised no objection to the SIF's participating in the hearing before the hearing officer, did not object to the petition for review filed by the SIF, and included the SIF as a party in its appeal from the Commission's decision. Therefore, we reverse the decision of the court of appeals striking the SIF as a party.

### III.

█ Petitioners contend that section 8–51–106(1)(a), 3 C.R.S. (1983 Supp.) requires benefits to be paid by the SIF, regardless of the contribution of nonindustrial factors to the claimant's permanent total disability. We disagree. This section provides:

> In a case where an employee has previously sustained permanent partial *industrial* disability and in a subsequent injury sustains additional permanent partial *industrial* disability and it is shown that the combined *industrial* disabilities render the employee permanently and totally incapable of steady gainful employment and incapable of rehabilitation to steady gainful employment, then the employer in whose employ the employee sustained such subsequent injury shall be liable only for that portion of the employee's industrial disability attributable to said subsequent injury, and the balance of compensation due such employee on account of permanent total disability shall be paid from the subsequent injury fund as is provided in this section.

Section 8–51–106(1)(a), 3 C.R.S. (1983 Supp.) (emphasis added).

The purpose of establishing the SIF was to provide partially disabled workers with added opportunities for employment by relieving subsequent employers from the harsh results of the "full responsibility" rule. *Sears, Roebuck & Co. v. Baca*, 682

P.2d 11 (Colo.1984); *Horizon Land Corp. v. Industrial Commission*, 34 Colo.App. 178, 524 P.2d 638 (1974). Before the SIF was created, an employer who hired a partially disabled worker was responsible for the entire disability award if the worker suffered a subsequent injury and was declared permanently and totally disabled. *Colorado Fuel & Iron Corp. v. Industrial Commission*, 151 Colo. 18, 379 P.2d 153 (1962). In those limited circumstances provided by the statute, affected employers may now seek to apportion liability between themselves and the SIF when a worker suffers at least two accidents, each resulting in a permanent partial industrial disability, and the combined effect of his industrial disabilities renders him permanently and totally disabled. When liability is apportioned, the employer pays for only that portion of the worker's total disability which can be attributed to the subsequent injury. The SIF pays the remainder of the worker's total disability award as well as ongoing compensation payments for the rest of the worker's life.[4]

Before the 1975 legislation broadened the scope of apportionment to include any permanent partial industrial disability, the SIF compensated workers only in the more limited circumstances of cumulative job-related injuries to the hand, arm, foot, leg, or eye. Ch. 210, sec. 76, 1919 Colo.Sess.Laws 730. If the legislature had wanted to fully enhance opportunities for employment of persons with prior medical conditions or handicaps, employers would have been accorded the protection of apportionment not only for prior industrial disabilities, but also for prior nonindustrial impairments. Marino, *Primer on Permanent Disability in the Colorado Workmen's Compensation Law*, 57 Den.L.J. 573, 581 (1980). The legislature has not extended apportionment

---

and in that name the director may sue and be sued in all matters related to the subsequent injury fund. Ch. 57, sec. 1, § 8–51–106, 1984 Colo.Sess.Laws 305.

**4.** The SIF is funded by employers and their insurance carriers who are required to pay an

amount specified in the statute to the Division of Labor each time a worker without dependents dies from a job-related injury. The state treasurer is the custodian of the SIF. Section 8–51–106(1)(b), 3 C.R.S. (1983 Supp.).

to prior nonindustrial impairments, and we refuse to do so now.

We must give effect to the meaning intended by the General Assembly. *Stewart v. Public Employees' Retirement Association,* 43 Colo.App. 25, 612 P.2d 1141 (1979). Section 2–4–101, 1B C.R.S. (1973), requires statutory words and phrases to be construed according to their familiar and generally accepted meaning. *See also Harding v. Industrial Commission,* 183 Colo. 52, 515 P.2d 95 (1973). Here, the statute expressly provides that combined industrial disabilities must render the employee permanently and totally incapable of steady gainful employment and incapable of rehabilitation. No provision is made for nonindustrial factors or preexisting conditions.

▇ Construction of a statute by administrative officials charged with its enforcement shall also be given deference by the courts. *Travelers Indemnity Co. v. Barnes,* 191 Colo. 278, 552 P.2d 300 (1976); *Davis v. Conour,* 178 Colo. 376, 497 P.2d 1015 (1972). The Commission's experience and conclusion, combined with the language adopted by the General Assembly, lead us to conclude that section 8–51–106(1)(a), 3 C.R.S. (1983 Supp.) precludes compensation by the SIF when nonindustrial factors contribute to the claimant's total disability.

### IV.

The petitioners also contend that the Commission improperly applied the statutory standard of review established by section 8–53–106(2)(b), 3 C.R.S. (1982 Supp.). Specifically, they claim the Commission substituted its own finding for the hearing officer's "evidentiary" finding that "[t]he combined industrial disabilities render the claimant permanently and totally incapable of steady gainful employment and incapable of rehabilitation to steady gainful em-

ployment." The court of appeals found that the Commission was authorized to make its own finding of ultimate conclusions of fact. We agree with the court of appeals.

▇ Section 8–53–106(2)(b), 3 C.R.S. (1982 Supp.) states:

The findings of evidentiary fact, as distinguished from ultimate conclusions of fact, made by the director or referee shall not be set aside by the commission on review of the director's or referee's decision unless the findings of evidentiary fact are contrary to the weight of the evidence. The commission may remand the case to the director or referee for such further proceedings as it may direct, or it may affirm, set aside, or modify the order or any sanction or relief entered therein, in conformity with the facts and the law.[5]

Findings of evidentiary fact involve the raw, historical data underlying the controversy, whereas findings of ultimate fact involve a conclusion of law or at least a determination of a mixed question of law and fact and settle the rights and liabilities of the parties. *de Koevend v. Board of Education of West End School District RE–2,* 688 P.2d 219, 225 (Colo.1984); *Lee v. State Board of Dental Examiners,* 654 P.2d 839, 844 (Colo.1982); *Ricci v. Davis,* 627 P.2d 1111, 1118 (Colo.1981); *Blair v. Lovett,* 196 Colo. 118, 124 n. 13, 582 P.2d 668, 674 n. 13 (1978). Ultimate facts are often stated in terms of a statutory standard. *Ricci v. Davis,* 627 P.2d 1111, 1118 (Colo.1981). In the instant case, the hearing officer's "evidentiary" finding was little more than a conclusory statement phrased in the exact terms of the statute. The finding was also one which settled the rights and liabilities of the parties; the SIF, in lieu of the employer, was required to compensate the claimant as a result of

---

**5.** The General Assembly, effective July 1, 1983, repealed and reenacted Article 53 of title 8, C.R.S. with amendments. The current standard of review, set out in § 8–53–111(7), 3 C.R.S. (1983 Supp.), provides: "The commission may reverse, remand, or affirm any order [entered

by the director or hearing officer] .... If the findings of evidentiary fact entered by the director or hearing officer are supported by substantial evidence, they shall not be altered by the commission."

the finding. These characteristics indicate the finding is one of ultimate fact.

The determination that the combined industrial disabilities render a claimant permanently and totally disabled also requires findings of a number of subissues which involve ultimate conclusions of fact. First, the claimant must have previously suffered an industrial injury and sustained permanent partial disability. Such a finding is one of evidentiary fact involving raw historical data. Second, the claimant's subsequent industrial injury must result in a permanent partial disability. The determination of the extent of this subsequent permanent partial disability is one of ultimate fact. *R & R Well Service Co. v. Industrial Commission*, 658 P.2d 1389 (Colo.App.1983) (Commission acts within the statutory scope of review when it reaches its own conclusion with respect to claimant's percentage of permanent partial disability), *cited with approval in Industrial Commission v. Jones*, 688 P.2d 1116, 1119 (Colo.1984) *and Baca v. Helm*, 682 P.2d 474 (Colo.1984). Therefore, the determination that the subsequent permanent partial disability combines with the previously sustained permanent partial disability to render the claimant totally disabled is necessarily one of ultimate fact. The Commission was thus free to make its independent conclusion concerning the hearing officer's findings of ultimate fact. *Baca v. Helm*, 682 P.2d 474 (Colo.1984); *R & R Well Service Co. v. Industrial Commission*, 658 P.2d 1389 (Colo.App.1983).[6]

Accordingly, we affirm in part and reverse in part the judgment of the court of appeals.

QUINN, J., dissents.

LOHR, J., does not participate.

---

**6.** The Commission's interpretation of section 8–51–106(1)(a), 3 C.R.S. (1983 Supp.) (SIF compensation), was correct; therefore, the Commission's findings of ultimate fact had a reasonable basis in the law. *Ricci v. Davis,* 627 P.2d 1111 (Colo.1981).

QUINN, Justice, dissenting:

I dissent on two counts. First, I disagree with the majority's characterization of the hearing officer's findings on the cause of the claimant's permanent and total disability as "ultimate conclusions of fact" and therefore subject to reversal by the Industrial Commission under section 8–53–106(2)(b), 3 C.R.S. (1982 Supp.), ch. 86, sec. 2, 1981 Colo.Sess. Laws 476–77.[1] Second, I cannot accept the majority's construction of section 8–51–106(1)(a), 3 C.R.S. (1983 Supp.), to preclude the payment of compensation benefits by the Subsequent Injury Fund when nonindustrial factors contribute to the claimant's permanent and total disability.

I.

The fact that the claimant is entitled to total and permanent disability benefits is not disputed by any party to this appeal. The only dispute is whether the claimant's last employer, the City and County of Denver, is liable for payment of the entire award of permanent and total disability, or, instead, is liable for that percentage of permanent disability attributable to the claimant's last industrial accident on January 18, 1980, with the Subsequent Injury Fund being liable for the balance of permanent and total disability payments.

The hearing officer found, as relevant here, (1) that the claimant sustained a twenty-five percent permanent disability as the result of the industrial accident on January 18, 1980, while he was employed by the City and County of Denver, and (2) that the claimant had previously sustained permanent partial disability as a result of prior industrial accidents. From these findings the hearing officer concluded that "[t]he combined industrial disabilities render the claimant permanently and totally incapable of steady gainful employment and incapa-

---

**1.** Article 53 of the Workmen's Compensation Act was repealed and reenacted in 1983. §§ 8–53–101 to 129, 3 C.R.S. (1983 Supp.). Statutory references in this dissent are to those provisions applicable to the proceedings in this case.

ble of rehabilitation to steady gainful employment," with the result that the Subsequent Injury Fund was liable for the payment of that part of permanent and total disability over and above the claimant's twenty-five percent permanent partial disability attributable to the industrial accident on January 18, 1980.

On review the Industrial Commission made additional factual findings. It found that the cause of the claimant's permanent and total disability was attributable not only to the industrial accidents to which the hearing officer referred in his findings but also to several other nonindustrial conditions, such as asthma, glaucoma, obesity, and arthritis. Based on these additional factual findings, the commission concluded:

> that claimant has suffered permanent total disability from a combination of industrial injuries and other conditions of health and afflictions, which disability was not caused exclusively by the first injury combined with the subsequent injury ... and that the Subsequent Injury Fund is not liable upon the claim.

Consequently, under the commission's order, the City and County of Denver, the last employer, must bear the total burden of paying permanent and total disability benefits to the claimant. The court of appeals affirmed the commission's order, holding that the additional findings by the commission were ultimate findings of fact within the commission's authority under section 8–51–106(1)(a) and that the commission's interpretation of the statutory liability of the Subsequent Injury Fund under section 8–51–106(1)(a) was correct.

## II.

In contrast to the majority, I view the hearing officer's finding on the actual causation of the claimant's permanent and total disability as a finding of evidentiary fact and thus binding on the commission under section 8–53–106(1)(a). Findings of evidentiary fact involve the raw, historical data underlying the controversy. *deKoevend v. Board of Education,* 688 P.2d 219, 226 (Colo.1984); *Lee v. State Board of*

*Dental Examiners,* 654 P.2d 839, 844 (Colo.1982); *Ricci v. Davis,* 627 P.2d 1111, 1118 (Colo.1981); *Blair v. Lovett,* 196 Colo. 118, 124, n. 13, 582 P.2d 668, 672, n. 13 (1978); *see also Industrial Commission v. Jones,* 688 P.2d 1116, 1120 (Colo.1984) (Quinn, J., dissenting). In the order of nature, actual causation plays a central role as a precondition of legal redress. Once actual cause is established, legal causation must then be determined. In a worker's compensation case, this means that the claimant must demonstrate the industrial accident causing his disability was a sufficient legal cause to justify the granting of legal redress. The determination of legal cause involves the application of legal standards in order to determine the rights and liabilities of the parties. *deKoevend,* 688 P.2d at 224; *Lee,* 654 P.2d at 844; *Ricci,* 627 P.2d at 1118; *Blair,* 196 Colo. at 124, n. 13, 582 P.2d at 672, n. 13; *R & R Well Service Co. v. Industrial Commission,* 658 P.2d 1389, 1391 (Colo.App.1983); *see also Jones,* 688 P.2d at 1122 (Quinn, J., dissenting). These legal standards are based on statutory or jurisprudential policy considerations underlying the imposition of ultimate legal liability and, as such, are substantively and analytically distinct from the raw, historical data inherent in a finding of the actual causation of a worker's disability. Cases involving such statutory standards as "proximate" and "intervening" cause, "arising out of employment," and "the course of employment" point up the policy considerations necessarily applicable in resolving questions of legal cause and compensable consequences in worker's compensation law. *E.g., Standard Metals Corp. v. Ball,* 172 Colo. 510, 474 P.2d 622 (1970); *Johnson v. Industrial Commission,* 148 Colo. 561, 366 P.2d 864 (1961); *Alexander Co. v. Industrial Commission,* 136 Colo. 486, 319 P.2d 1074 (1957); *see generally* 1 A. Larson, *The Law of Workmen's Compensation* §§ 6.10 to 6.60, 13.-11, 13.12 (1984).

Section 8–53–106(2)(b) prohibits the commission from setting aside a hearing officer's findings of evidentiary fact unless those findings are "contrary to the weight

of the evidence." The commission in this case made no determination that the hearing officer's findings on the actual cause of the claimant's permanent total disability were contrary to the weight of the evidence. Instead, the commission made extensive factual findings of its own on these matters. Section 8–53–106(2)(b), in my view, does not authorize the commission to engage in the type of independent and far-ranging factual inquiry that it pursued in this case. The commission's review function "is predicated on the assumption that the [hearing officer] is in the best position to resolve factual questions." *Jones*, 688 P.2d at 1122 (Quinn, J., dissenting). This assumption is eminently reasonable because resolution of factual questions will often turn on the hearing officer's assessment of the credibility of witnesses testifying before him and his allocation of differing weight to their respective testimony. These are functions which the commission, in its review of the "record," cannot effectively perform.

While I agree that the hearing officer's determination of the Subsequent Injury Fund liability was an ultimate conclusion, since it was a legal conclusion that resolved the rights and liabilities of the parties, I believe it was inappropriate for the commission to make those evidentiary findings that were essential to a correct resolution of this ultimate issue. The appropriate course for the commission, in my opinion, was to remand the case to the hearing officer for any additional factual findings necessary to correctly determine the liability of the Subsequent Injury Fund for the claimant's permanent and total disability.

### III.

I also disagree with the majority's holding that section 8–51–106(1)(a) precludes Subsequent Injury Fund liability when nonindustrial factors contribute to the claimant's permanent and total disability. In a worker's compensation proceeding a claimant need only establish by a preponderance of the evidence that a disability resulted from or was precipitated by an industrial accident. *Public Service Co. v. Industrial Commission*, 189 Colo. 153, 538 P.2d 430 (1975); *Industrial Commission v. Royal Indemnity Co.*, 124 Colo. 210, 236 P.2d 293 (1951). We have never required an employee to establish that the causal nexus between an industrial accident and an ensuing industrial disability was such as to eliminate all nonindustrial factors. "Compensation is not dependent on the state of an employee's health or his freedom from weakness or latent tendency." *Industrial Commission v. Newton Co.*, 135 Colo. 594, 601, 314 P.2d 297, 301 (1957). Rather, once it is determined that an injury arose out of and in the course of employment, "the results flowing proximately and naturally therefrom come under the aegis of the statute." *Standard Metals Corp. v. Ball*, 172 Colo. 510, 515, 474 P.2d 622, 625 (1970), quoting *Vanadium Corp. v. Sargent*, 134 Colo. 555, 566, 307 P.2d 454, 461 (1957). I see no reason to adopt a different standard of causation for purposes of determining Subsequent Injury Fund liability. In many cases nonindustrial factors might well contribute in some way to a worker's permanent and total disability, but these nonindustrial factors, by themselves, are not such as to render the worker permanently and totally disabled in the absence of the ensuing industrial accident.

I would impose Subsequent Injury Fund liability whenever it is demonstrated that the subsequent industrial disability was a substantial factor in rendering the employee permanently and totally incapable of steady gainful employment and incapable of employment rehabilitation. This construction comports with the statutory goal of Subsequent Injury Fund liability, which is to "enhance the opportunities for employment for partially disabled persons." *Horizon Land Corp. v. Industrial Commission*, 34 Colo.App. 178, 181, 524 P.2d 638, 640 (1974). Without Subsequent Injury Fund protection, employers will naturally be reluctant to hire persons who suffer from industrial and nonindustrial disabilities because, as this case demonstrates, the last employer will be liable for permanent and total compensation benefits, notwith-

standing the employee's preexisting partial industrial disability, in the event the employee sustains an industrial accident and is thereafter permanently and totally incapable of steady gainful employment and incapable of employment rehabilitation. The majority, by conditioning Subsequent Injury Fund liability on a demonstration that nonindustrial factors in no way contributed to permanent and total disability, puts the last potential employer on notice that he or she assumes a substantial economic risk by hiring someone who suffers from both industrial and nonindustrial disabilities. The resulting diminution in employment opportunities for those suffering the joint consequences of industrial and nonindustrial disabilities is, in my view, the very antithesis of what section 8–51–106(1)(a) seeks to accomplish.

I would reverse the judgment of the court of appeals and hold that the Subsequent Injury Fund is liable for the total and permanent disability benefits in excess of the twenty-five percent disability attributable to the industrial accident of January 18, 1980.