**SUBSEQUENT INJURY FUND; and Director, Division of Labor, Petitioners,**

v.

**DENVER PUBLIC SCHOOLS; State Compensation Insurance Authority; Norma Hicks; and Industrial Claim Appeals Office, Respondents.**

No. 89SC560.

Supreme Court of Colorado, En Banc.

Oct. 9, 1990.

---

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Jill M.M. Gallet, Asst. Atty. Gen., Denver, for petitioners.

John Berry, Denver, for respondents.

No appearance by Norma Hicks and Industrial Com'n Claim Appeals Office.

Justice KIRSHBAUM delivered the Opinion of the Court.

In *Denver Public Schools v. Hicks*, No. 88CA1591 (Colo.App. Aug. 31, 1989) (not selected for official publication), the Colorado Court of Appeals held that petitioner, the Subsequent Injury Fund (the Fund), and respondent State Compensation Insurance Authority (the Authority) are each responsible for fifty percent of the permanent total disability sustained by an employee, Norma Hicks (the claimant). That judgment reversed a decision rendered by the Industrial Claim Appeals Office (the Panel) to the effect that under this court's decision in *City and County of Denver v. Industrial Commission*, 690 P.2d 199 (Colo.1984) (hereinafter *Hatch*), the Fund was not liable for any portion of the claimant's disability because her disability re-sulted in part from non-industrial causes. Having granted a petition for certiorari filed by the Fund and the Director of the Division of Labor to determine whether this case is governed by our decision in *Hatch*, we affirm.

## A

In February of 1980, while employed by the Denver Public Schools, the claimant sustained an industrial injury to her neck. Surgery was performed, and the Denver Public Schools and the Authority admitted liability for a five percent permanent partial disability.

The claimant sustained two additional industrial injuries in 1983, and in March 1984, sustained another industrial injury—a low back strain. The Denver Public Schools and the Authority admitted liability for an additional five percent permanent partial disability for the claimant's 1984 injury.

Although the claimant returned to work after her 1984 injury, she suffered increasing pain. In January 1985, she became a patient of Dr. William E. Gamble, an orthopedic surgeon. The evidence in this case concerning the cause of the claimant's disability consists primarily of Dr. Gamble's medical records and his deposition testimony.

On January 22, 1986, after examining the claimant, Dr. Gamble noted in his medical records that she was suffering from facet arthritis and that the 1984 injury had aggravated her arthritic condition. In a February 1987 deposition, Dr. Gamble testified that facets are "small joints in the lower back between the vertebrae ... [that] become arthritic, often secondary to disc problems, which means they wear out [and] develop spurs. That is what I believe her problem is." When asked to identify the source of the facet arthritis, Dr. Gamble testified that the claimant had degenerated discs, that these discs had been aggravated by several injuries, and that "[t]his has put more stress on these facet joints [and has] caused them to become arthritic."[1]

---

1. In a December 7, 1987, deposition, Dr. Gamble again testified that the claimant's arthritis was caused by her injuries "plus normal degenerative processes." He also testified at that time

In September 1986, Dr. Gamble recommended that the claimant cease working. He ultimately determined that she had a permanent total disability of twenty percent.

Hearings were conducted in June 1986 and November 1987 concerning the claimant's condition. The parties having stipulated that the claimant was permanently and totally disabled as of November 1, 1986, the only question for determination was whether the Fund was liable for a portion of that disability pursuant to section 8–51–106(1)(a)–(b), 3B C.R.S. (1986). The administrative law judge (the ALJ)[2] concluded that the claimant's twenty percent permanent total disability was caused "solely by industrial injuries," emphasizing that the 1980 and 1984 industrial injuries "caused [the claimant's] arthritic changes." Apportioning the claimant's disability equally between those two injuries, the ALJ held the Fund liable for fifty percent thereof.

The Fund and the Denver Public Schools appealed this decision to the Panel. In an October 5, 1988 decision, the Panel reversed the ALJ's ruling insofar as it held the Fund liable for a portion of the claimant's disability. The Panel held that the ALJ's determination that the claimant's disability resulted solely from industrial injuries was not supported by substantial evidence. Concluding that undisputed evidence established that the claimant's disability was caused in part by the natural degeneration of her discs, the Panel ruled that in view of our decision in *Hatch*, 690 P.2d 199, the Fund had no responsibility for payments to the claimant.

The Authority appealed the Panel's decision to the Court of Appeals. That court concluded that because the claimant's non-industrial impairment "was directly affected by her industrial injuries" and because there was "no evidence that [her] degenerative disc condition was independently disabling prior to the 1984 industrial injury," the Panel erred in reversing the ALJ's order. The Fund then filed its petition for certiorari.

B

The Fund asserts that the question of its responsibility for payments to the claimant is governed by *Hatch* and that the Court of Appeals erroneously failed to apply the rule of that case to the claimant. We disagree.

In *Hatch*, we concluded that in view of the specific language of section 8–51–106(1)(a) and (b), 3B C.R.S. (1986),[3] the

that although the 1980 and 1984 injuries contributed to the claimant's impairment, the normal degenerative process also contributed to her impairment. No other evidence of the cause of the claimant's disability was introduced.

2. The initial hearing was conducted by Thomas Korson; the second hearing was conducted by Morgan Rumler, who authored the ALJ decision.

3. The following pertinent provisions of § 8–51–106 are identical to the statutory language construed in *Hatch* and are applicable to this case:

Subsequent injury fund. (1)(a) In a case where an employee has previously sustained permanent partial industrial disability and in a subsequent injury sustains additional permanent partial industrial disability and it is shown that the combined industrial disabilities render the employee permanently and totally incapable of steady gainful employment, then the employer in whose employ the employee sustained such subsequent injury shall be liable only for that portion of the employee's industrial disability attributable to said subsequent injury, and the balance of compensation due such employee on account of permanent total disability shall be paid from the subsequent injury fund as is provided in this section.

(b) In addition to such compensation and after the completion of the payments therefor, the employee shall continue to receive compensation at his established compensation rate for permanent total disability until death out of a special fund to be known as the "subsequent injury fund", created for such purpose in the following manner: For every compensable injury resulting in death wherein there are no persons either wholly or partially dependent upon the deceased, the employer or his insurance carrier, if any, shall pay to the division the sum of fifteen thousand dollars, to be deposited with the state treasurer, as custodian, into the subsequent injury fund. In the event there are only partially dependent persons dependent upon the deceased, the employer or his insurance carrier, if any, shall first pay such benefits to such partial dependents and the balance of the sum

Fund was relieved of liability for payments to a disabled employee whose permanent and total disability resulted from several non-industrial factors combined with two industrial injuries. In that case, the employee's disability was not caused solely by industrial injuries. In *Subsequent Injury Fund v. Thompson*, 793 P.2d 576 (Colo. 1990), and *Subsequent Injury Fund v. State Comp. Ins. Auth.*, 793 P.2d 580 (Colo.1990), we emphasized that the Fund is not necessarily relieved of liability when an employee's disability results from a combination of industrial injuries and non-industrial factors. In *Thompson*, we held that even though an employee was more susceptible to heart attacks because of a natural physical condition, the Fund was liable for disability payments because the evidence established that the employee's permanent total disability was caused by heart attacks which were industrial injuries and did not result from his preexisting heart condition.

In this case, the ALJ concluded that the claimant's permanent total disability resulted solely from her industrial injuries. When the findings of an ALJ are supported by substantial evidence, those findings must be upheld by the Panel. § 24-4-106(7), 10A C.R.S. (1988); *DeScala v. Motor Vehicle Div.*, 667 P.2d 1360 (Colo. 1983); *Institute for Research v. Board of Assessment Appeals*, 748 P.2d 1346 (Colo. App.1987). The record in this case contains substantial evidence to support the ALJ's conclusion that while the claimant apparently suffered from a mild degenerative disc condition prior to sustaining any industrial injuries, her permanent total disability resulted solely from her industrial injuries and not from her preexisting disc condition. *See Subsequent Injury Fund v. Devore*, 780 P.2d 39 (Colo.App.1989). Under these circumstances, the Panel erred in reversing that decision, as the Court of Appeals concluded.

Because the claimant's permanent total disability was caused solely by industrial injuries she sustained in 1980 and 1984, the Fund is liable for a portion of the payments to which the claimant is entitled. The Fund does not challenge the ALJ's allocation to it of liability for fifty percent of those payments.

C

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

Justice VOLLACK and Justice MULLARKEY did not participate.

of fifteen thousand dollars, to be deposited with the state treasurer, as custodian, into the subsequent injury fund.

§ 8–51–106(1)(a)–(b), 3B C.R.S. (1986). The creation of the Fund was designed to alleviate the harsh consequences of the full responsibility rule. *Subsequent Injury Fund v. Thompson*, 793 P.2d 576, 578, 579 (Colo.1990). Section 8–51–106 was repealed effective July 1, 1990. Colo. Sess.Laws ch. 62, pt. 2, § 77 (1990).