Howard R. BOWLAND, Petitioner,

v.

The INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO; United Airlines, Inc.; and The Subsequent Injury Fund, Respondents.

No. 97CA1740.

Colorado Court of Appeals,
Division II.

Aug. 20, 1998.

Rehearing Denied Sept. 24, 1998.

Certiorari Granted May 24, 1999.

Timothy Quinn, Denver, Colorado, for Petitioner.

No Appearance for Respondent Industrial Claim Appeals Office.

Clifton, Hook & Bovarnick, P.C., Clyde E. Hook, Harvey D. Flewelling, Denver, Colorado, for Respondent United Airlines, Inc.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Andrew M. Katarikawe, Assistant Attorney General, Denver, Colorado, for Respondent Subsequent Injury Fund.

Gordon & Macdonald, P.C., William J. Macdonald, Denver, Colorado, for Amicus Curiae Workers' Compensation Education Association

Opinion by Judge BRIGGS.

In this workers' compensation proceeding, Howard R. Bowland (claimant) seeks review of a final order of the Industrial Claim Appeals Office (Panel). In that order, the Panel affirmed the decision by the Administrative Law Judge (ALJ) to apportion to claimant financial responsibility for part of his permanent total disability benefits, leaving him with less than a full award of benefits. We set the Panel's order aside.

Claimant worked as a baggage-handler for United Airlines, Inc. (employer). He sustained successive work-related injuries to his

left hand and was later diagnosed with an occupational disease. His claims were consolidated and he received a 9% permanent partial disability rating.

Some time later, claimant suffered an industrial injury to his back. Since then, he has been unable to return to work.

It was undisputed that claimant is permanently and totally disabled as a result of the combined effect of his injuries. However, employer and the Subsequent Injury Fund (SIF) contested their respective responsibilities for payment of permanent total disability benefits.

After an evidentiary hearing, the ALJ apportioned 91% of claimant's permanent total disability to the back injury and 9% to the earlier injuries. The ALJ determined that, because the back injury occurred after the SIF had stopped accepting cases, claimant was precluded from recovering any portion of the award from it. The ALJ ordered employer to pay 91% of claimant's benefits but, relying on the apportionment statute, § 8–42–104(2), C.R.S.1997, refused to hold it liable for the balance. Hence, claimant was denied a full award of permanent total disability benefits.

The Panel affirmed the ALJ's order. It specifically rejected claimant's argument that, pursuant to recent amendments to the SIF statutes, including § 8–46–105(1), C.R.S. 1997, last employers and their insurers are financially responsible for a full award of permanent total disability benefits in those cases in which funding had previously been available from the SIF. The Panel concluded that while some legislative history supported the argument, it could not assume the General Assembly intended implicitly to repeal § 8–42–104(2), which requires that responsibility for benefits be apportioned.

■ On appeal, claimant argues the SIF amendments, including § 8–46–105(1), have replaced SIF funding with a modified form of the "full responsibility" rule. The rule, which was in effect in Colorado before the creation of the SIF, provides that, if an employer hires an employee previously partially disabled by an industrial injury, the employer must pay the entire disability award if the employee suffers another industrial injury and is declared permanently and totally disabled as a result. *Subsequent Injury Fund v. Thompson*, 793 P.2d 576 (Colo.1990); *Waddell v. Industrial Claim Appeals Office*, 964 P.2d 552 (Colo.App.1998). According to claimant, § 8–46–105(1) ameliorates the financial impact on last employers and their insurers of full responsibility, while protecting the right claimants have always had to a full award of benefits for permanent total disability benefits resulting from successive work injuries.

In contrast, employer argues that, by not repealing § 8–42–104(2) when the SIF statutory scheme was amended, the General Assembly chose not to return to the full responsibility rule, long ago abandoned. Hence, § 8–42–104(2) still requires apportionment of permanent total disability benefits.

The question raised is the intent of the General Assembly in amending the SIF statutes, including the addition of § 8–46–105(1), without repealing § 8–42–104(2). Specifically, we must determine whether financial responsibility for that portion of a permanent total disability award previously paid by the SIF has been shifted to the claimant or, instead, back to the last employer and its insurer. To answer that question, we must initially consider the applicable statutes and their recent amendments.

I.

Apportionment of disability awards is governed by § 8–42–104(2). It provides that:

In case there is a previous disability, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury. In such cases awards shall be based on said computed percentage. Such computation, when applicable, shall be made in the following types of awards under articles 40 to 47 of this title: Permanent total, permanent partial, including scheduled, working unit, and lump sum; *except that, in the event the provisions of section 8–46–101 are applica-*

*ble, such apportionment shall not be made.* (emphasis supplied)

Section 8–46–101, C.R.S.1997, creates a different form of apportionment under which a permanently and totally disabled worker still recovers full compensation for permanent and total disabilities:

(1)(a) In a case where an employee has previously sustained permanent partial industrial disability and in a subsequent injury sustains additional permanent partial industrial disability and it is shown that the combined industrial disabilities render the employee permanently and totally incapable of steady gainful employment and incapable of rehabilitation to steady gainful employment, then the employer in whose employ the employee sustained such subsequent injury shall be liable only for that portion of the employee's industrial disability attributable to said subsequent injury, and the balance of compensation due such employee on account of permanent total disability shall be paid from the subsequent injury fund as is provided in this section.

(b)(I) In addition to such compensation and after the completion of the payments therefor, the employee shall continue to receive compensation at said employee's established compensation rate for permanent total disability until death out of a special fund to be known as the subsequent injury fund, hereby created for such purpose. . . .

In 1992, the General Assembly substantially amended the SIF statutes, including the addition of § 8–46–104, C.R.S.1997. Under the new statute, the SIF is precluded from accepting new cases after July 1, 1993:

No cases shall be accepted into the subsequent injury fund for injuries occurring on or after July 1, 1993, or for occupational diseases occurring on or after April 1, 1994. When all payments have been made for all cases accepted into the fund, any remaining balance shall revert to the general fund.

*See* Colo. Sess. Laws 1992, ch. 238, § 8–46–104 at 1830.

The purpose of this latter enactment was to address the escalating cost of the SIF, which had run out of funds. *See* Hearing on H.B. 1280 Before the House Labor and Industry Committee, 58th General Assembly, Second Regular Session (Tape of February 19, 1992, at 9:59 a.m.); Hearing on H.B. 1280 Before the Senate Committee on Business Affairs and Labor, 58th General Assembly, Second Regular Session (Tape of April 1, 1992, at 3:36 p.m.).

In the same session, the General Assembly added another new provision, now codified at § 8–46–105(1). The new statute establishes a method for limiting an employer's financial responsibility for a full award of permanent total disability benefits, while at the same time permitting the employer's insurer to spread the cost of paying a full award:

Effective July 1, 1993 in any case in which an employee previously has sustained permanent partial disability and, in a subsequent injury, sustains additional permanent partial disability and it is shown that the combined industrial disabilities render the employee permanently and totally disabled, then the premiums of the employer in whose employ the employee sustained such subsequent injury shall be determined only on the basis of such subsequent injury and not on the basis of the employee's permanent total disability. The total cost of the employee's permanent total disability shall not be considered in determining the employer's premiums, but shall be considered by the commissioner of insurance in setting rates. The insurance carrier or self-insured employer may seek indemnification from any previous employer of the injured employee for a share of benefits proportional to their liability.

*See* Colo. Sess. Laws 1992, ch. 238, § 8–46–105 at 1831.

This provision was amended again in 1993 when the General Assembly deleted the last sentence permitting the liable employer to seek indemnification from previous employers. *See* Colo. Sess. Laws 1993, ch. 351, § 8–46–105 at 2142. The sentence was deleted because it created difficulties with settling claims, given an employer's ongoing and unknown liability to subsequent employers.

Deletion of the sentence also negated the risk that carriers for prior employers would be precluded from recouping the cost of benefits through increased premiums where the prior employer had changed carriers or had gone out of business by the time the subsequent injury occurred. *See* Hearing on H.B. 1356 Before the House Committee on Labor and Industry, 59th General Assembly, First Regular Session (Tape of May 6, 1993, at 2:30 p.m.); *see also Waddell v. Industrial Claim Appeals Office, supra* (Briggs, J., concurring).

The amendment also included language clarifying that the basis for adjusting an employer's premiums is the impairment rating for the last injury, rather than the amount of disability attributed to that injury, and it provided a procedure for the employer to dispute that rating:

> [T]he premiums of the employer in whose employ the employee sustained such subsequent injury shall be determined only on the basis of the impairment rating for such subsequent injury and not on the basis of the employee's permanent total disability. If such employer disputes the impairment rating for the subsequent injury, the employer shall request an independent medical examination pursuant to the procedures set forth in section 8–42–107. The finding of the independent medical examiner regarding the impairment rating may be overcome only by clear and convincing evidence.

*See* Colo. Sess. Laws 1993, ch. 351, § 8–46–105 at 2142 (now codified at § 8–46–105(1), C.R.S.1997).

In sum, before the amendments, the SIF statutes permitted the last employer to avoid the entire financial impact of full responsibility, while the permanently and totally disabled worker received a full award of benefits. While the apportionment statute, § 8–42–104(2) has not been recently amended, the SIF statutes have been substantially amended.

To determine whether the amendments to the SIF statutes have shifted financial responsibility for that portion of benefits previously paid by the SIF to the claimant or, instead, to the last employer and its insurer,

we apply traditional rules of statutory construction.

## II.

■ The primary task in interpreting a statutory scheme is to ascertain and give effect to the legislative intent. To accomplish this task, we turn first to the words of the statute. However, when a plain reading of a statute does not reveal that intent, it may be discerned through consideration of various indicators, including the balance of the enactments related to the same subject matter, the object sought to be obtained, and the consequences of a particular construction. *State Engineer v. Castle Meadows, Inc.,* 856 P.2d 496 (Colo.1993); *Gianetto Oil Co. v. Industrial Claim Appeals Office,* 931 P.2d 570 (Colo.App.1996); *see also Mountain City Meat Co. v. Oqueda,* 919 P.2d 246 (Colo. 1996).

■ Further, in construing a statutory scheme, courts must attempt to give consistent, harmonious, and sensible effect to all of its parts. *Henderson v. RSI, Inc.,* 824 P.2d 91 (Colo.App.1991). A construction that would render any clause or provision unnecessary, contradictory, or insignificant should be avoided. *Karlin v. Conard,* 876 P.2d 64 (Colo.App.1993).

■ Finally, a statute is presumed to be just and reasonable. Hence, a construction that produces absurd results must be avoided. *McKinley v. Bronco Billy's,* 903 P.2d 1239 (Colo.App.1995).

Here, if the apportionment statute, § 8–42–104(2) is read in isolation, it would appear that claimant's benefits are to be apportioned, with claimant apparently denied that portion of benefits previously paid by the SIF. However, the plain language of § 8–46–105(1) limits the financial impact on the last employer of paying a full award of benefits to an employee permanently and totally disabled through successive work injuries. The limitation necessarily assumes that, with the closure of the SIF, the last employer is responsible for paying the benefits previously paid by the SIF. Hence, the plain language

of the statutes does not reveal the General Assembly's intent.

Turning to other considerations, if we were to accept employer's argument that the General Assembly has shifted responsibility to claimants for benefits previously paid by the SIF, we would render meaningless that portion of § 8–46–105(1) which prohibits the insurer from calculating the last employer's premiums on the basis of a full award of permanent total disability. The prohibition would be unnecessary because the last employer could not be held liable for a full award.

Conversely, construing the amendments to the SIF to shift full responsibility to the last employer and its insurer does not render § 8–42–104(2) meaningless. It remains applicable under current law in those cases in which successive work injuries do not result in permanent total disability and those in which total disability is not entirely attributable to successive work injuries. *See Askew v. Industrial Claim Appeals Office*, 927 P.2d 1333 (Colo.1996); *City & County of Denver v. Industrial Commission*, 690 P.2d 199 (Colo. 1984).

Resolving the tension between the apportionment and funding statutes by placing full responsibility on the last employer and its insurer also avoids unjust, if not absurd, results. For example, if the evidence in this case had justified apportioning 91% of claimant's disability to his earlier injuries instead of his more recent back injury, the apportionment would result in his receiving only 9% of a permanent total disability benefit award. The impact on permanently and totally disabled workers of reducing benefits in this manner can only be described as disastrous. *See Waddell v. Industrial Claim Appeals Office, supra* (Briggs, J., concurring).

Most states have come to recognize the unfair impact of similar apportionment schemes and have abandoned them. *See generally 5 Larson's Workers' Compensation Law* § 59.21 at 10–492.340 and 10.492.359 (1997). Construing our statutes to avoid the possibility of such a disastrous financial impact is consistent with the modern approach.

Furthermore, our construction of the statutes is consistent with the goal of the General Assembly in creating the SIF. The purpose was to ameliorate the harsh result of the full responsibility rule on last employers and, in turn, to increase the employment opportunities for partially disabled workers. *Sears Roebuck and Co. v. Baca*, 682 P.2d 11 (Colo.1984). Even with full responsibility returned to the last employer, § 8–42–105(1) still accomplishes that goal by limiting the amount the employer's premiums can be increased based on a claim for permanent total disability benefits, while permitting the insurer to spread the cost of the balance of the award across the insurer's entire premium base.

We recognize that the General Assembly did not expressly repeal § 8–42–104(2) at the time it enacted § 8–46–105. And, it is understandable that the Panel was reluctant to assume that in enacting one statute the General Assembly intended to abrogate another. *See Arkansas Valley Seeds v. Industrial Claim Appeals Office*, 972 P.2d 695 (Colo. App.1998).

However, our construction of § 8–46–105(2) does not require us to assume the General Assembly intended to repeal § 8–42–104(2), implicitly or otherwise. As already noted, the General Assembly had to retain § 8–42–104(2) because it still applies in cases *other than* those involving permanent total disability resulting exclusively from successive work injuries.

Furthermore, the Panel's concern about implicitly impacting § 8–42–104(2) rests on the assumption that, before the SIF statutes were amended, last employers were not fully responsible for permanent total disability benefits even if no recovery was available from the SIF. While this assumption may be consistent with the wording of § 8–42–104(2), the argument ignores the supreme court's holding in *City & County of Denver v. Industrial Commission, supra*. The court in that case affirmed the Panel's conclusion that the SIF was available only when the claimant's permanent total disability was caused exclusively by industrial injuries. More impor-

tantly, it also affirmed, without discussion, the Panel's separate conclusion that the last employer was fully responsible for the total award.

It was not until *Askew v. Industrial Claim Appeals Office, supra*, was announced, after the General Assembly had enacted § 8–46–105(1), that the import of § 8–42–104(2) was recognized. Hence, it appears that when it was enacting § 8–46–105, the General Assembly would have been under the impression, based on existing case law, that the last employer remained fully responsible whenever the SIF was not liable for a portion of a permanent total disability award.

That impression is in fact reflected in the various committee hearings addressing § 8–46–105. The reason for enacting § 8–46–105 was to modify the full responsibility rule in order to reduce the financial impact on the last employer. This was to be accomplished by shifting those costs formerly paid by the SIF to the insurance carriers, for adjustment over the general premium base. *See* Hearing on H.B. 1280 Before the House and Senate Conference Committee, 58th General Assembly, Second Regular Session (Tape of May 5, 1992 at 6:10 p.m.); Hearing on H.B. 1280 Before the Senate Committee on Business Affairs and Labor, *supra* (Tape of April 1, 1992, at 3:43 p.m.). Thus, our construction of § 8–46–105(1) does not require us to assume the General Assembly intended to change in any way the legal effect of § 8–42–104(2), as it had been construed at the time the General Assembly enacted § 8–46–105(1). *See City & County of Denver v. Industrial Commission, supra; cf. Subsequent Injury Fund v. Thompson, supra; Seifried v. Industrial Commission*, 736 P.2d 1262 (Colo. App.1986); *State Compensation Insurance Fund v. Industrial Commission*, 697 P.2d 807 (Colo.App.1985).

In affirming the ALJ in this case, the Panel separately found problematic the fact that the impairment-based premium adjustments provided in § 8–46–105(1) do not necessarily bear a direct correlation to the apportionment of disability. It reasoned that

§ 8–42–104(2) more directly addresses the problem of apportionment.

However, the General Assembly could have rationally concluded that such an impairment rating was an acceptable, though not perfect, basis for apportioning premiums to ameliorate the impact on the last employer of full responsibility. This is because its use would further the goal of decreasing litigation. *See* § 8–40–102(1), C.R.S.1997; *Duran v. Industrial Claim Appeals Office*, 883 P.2d 477 (Colo.1994); *see generally* W. Macdonald, *Apportionment of Permanent Total Disability and the Impact of the Premium Statute*, CBA Workers' Compensation Newsletter 1 (Summer 1997). Hence, we do not view the mechanism for adjusting premiums contained in the current version of § 8–46–105(1) as inconsistent with our statutory construction.

As a final note, we reject employer's contention that our interpretation of the interplay between § 8–42–104(2) and § 8–46–105(1) results in an improper double recovery to claimants. The argument is that, because claimant has already received permanent partial disability benefits for the earlier injuries, he should not be entitled to recover permanent total disability benefits based in part on those same injuries. However, the argument ignores that permanent partial and permanent total benefits compensate for different degrees of disability during different periods of time and, thus, are not considered duplicative. *National Fruit Product v. Crespin*, 952 P.2d 1207 (Colo.App.1997); *see also Kehm v. Continental Grain*, 756 P.2d 381 (Colo.App.1987).

In light of our statutory construction, it is unnecessary to consider claimant's other arguments.

The Panel's order is set aside. The cause is remanded for entry of an order requiring employer to pay claimant the balance owing on a full award of permanent total disability benefits from past partial payments, with interest as provided by statute, and from that date forward to continue paying claimant a full award of permanent total disability benefits.

Judge STERNBERG,* and Judge TURSI,* concur.