Mark SIMON, Cheryl Simon, and
Malachai Simon, Plaintiffs–
Appellants,

v.

The STATE COMPENSATION INSUR-
ANCE AUTHORITY, The State Com-
pensation Insurance Fund, and The Col-
orado Compensation Insurance Authori-
ty, Defendants–Appellees.

No. 93CA2211.

Colorado Court of Appeals,
Div. IV.

Dec. 15, 1994.

As Modified on Denial of Rehearing
April 6, 1995.

Rehearing Denied May 11, 1995.

Certiorari Granted Oct. 10, 1995.

Andrew T. Brake, P.C., Andrew T. Brake, Lee .T. Judd, Denver, for plaintiffs-appellants.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., George S. Meyer, Asst. Atty. Gen., Denver, for defendants-appellees.

Opinion by Judge ROTHENBERG.

Plaintiffs, Mark Simon (Simon), Cheryl Simon, and Malachai Simon, appeal from the judgment of dismissal entered in favor of defendants, the State Compensation Insurance Authority (SCIA), the State Compensation Insurance Fund (SCIF), and the Colorado Compensation Insurance Authority (CCIA). We affirm.

According to plaintiffs' complaint, in 1982, Simon and his business partners applied for

and received workers' compensation insurance with SCIF.

In 1984, Simon became the sole proprietor of the business and notified SCIF that he was the new insured. He paid premiums for workers' compensation insurance, up to and including January 1985.

In January 1985, Simon was injured during the course of his employment and required substantial medical care. He made a claim for insurance benefits with SCIF, which denied his claim on the basis that sole proprietors were not covered under the policy. Simon challenged the decision of the SCIF, and, following a hearing, the Administrative Law Judge (ALJ) found that Simon's injuries were covered under the policy.

On July 1, 1987, SCIA took over the operations of SCIF and became the responsible party for purposes of making payments under Simon's workers' compensation claim. SCIA disputed Simon's entitlement to temporary disability and medical benefits. He challenged the decision and, in an order dated July 12, 1989, the ALJ awarded Simon medical and temporary disability benefits. SCIA appealed both decisions to the Industrial Claims Appeals Panel, which affirmed the orders.

In April 1990, SCIA filed a general admission of liability regarding temporary/total disability. Simon objected to the admission of liability and filed a motion to reopen concerning the issue of any offsets to which SCIA may be entitled. Following a hearing, the ALJ again entered an order in favor of Simon which was affirmed on appeal.

In July 1990, CCIA assumed the obligations of SCIA. CCIA failed to make any payments to or on behalf of Simon until September 1992. Meanwhile, Simon became involved in the legislative process relating to the workers' compensation laws.

Alleging that defendants had released private, confidential, and/or false information regarding him which resulted in damaged relationships between Simon and his wife and son, plaintiffs filed this action against defendants seeking damages for: (1) violation of constitutional rights under 42 U.S.C. § 1983 (1988); (2) bad faith/breach of fiduciary duty;

(3) outrageous conduct; (4) loss of consortium; (5) interference with familial relations; (6) invasion of privacy; and (7) violation of state and federal law. Plaintiffs provided notice of their claims as required by § 24-10-109, C.R.S. (1994 Cum.Supp.).

Defendants filed a motion to dismiss, contending that plaintiffs' tort claims were barred by the Colorado Governmental Immunity Act (the Immunity Act) and that plaintiffs' claim under 42 U.S.C. § 1983 (1988) also was barred because defendants were not "persons" within the meaning of the statute.

In response, plaintiffs claimed, *inter alia,* that the Immunity Act is unconstitutional and that defendants are persons within the meaning of § 1983 because they are state corporations. The trial court granted defendants' motion to dismiss.

## I.

Plaintiffs first argue that their tort claims are not barred by the Immunity Act because the statute itself is unconstitutional. Plaintiffs claim defendants should be subject to the same liability as any private insurance carrier, and to allow these defendants governmental immunity denies plaintiffs equal protection and violates their rights to due process and access to the courts. We reject these contentions.

■ A statute is presumed to be constitutional, and the burden is on the party attacking the statute to establish its unconstitutionality beyond a reasonable doubt. *Dove v. Delgado,* 808 P.2d 1270 (Colo.1991).

The Immunity Act provides that a public entity is immune from liability in all claims for injury which "lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant." It further provides that sovereign immunity is waived by a public entity in certain circumstances. *See* § 24-10-106, C.R.S. (1988 Repl.Vol. 10A).

The CCIA was created by statute, namely § 8-45-101(1), C.R.S. (1994 Cum.Supp.), which provides, in pertinent part:

There is hereby created the Colorado compensation insurance authority which shall

be a body corporate and a political subdivision of the state. *The authority shall not be an agency of state government,* nor shall it be subject to administrative direction by any state agency except as provided in this article, and *except for the purposes of the Colorado Governmental Immunity Act ... and except for inclusion in the risk management fund and by the division of risk management....* (emphasis added)

## A.

### Equal Protection

■ Plaintiffs claim the Immunity Act denies them equal protection in that it allegedly denies them a fundamental right guaranteed by the Colorado Constitution, namely, the right of access to the courts to remedy injuries suffered. We do not agree.

Colo. Const. art. II, § 6, states in relevant part that: "Courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character...." This provision simply provides that, if a right does accrue under the law, the courts will able to effectuate such right. *O'Quinn v. Walt Disney Productions, Inc.,* 177 Colo. 190, 493 P.2d 344 (1972). *See Allison v. Industrial Claim Appeals Office,* 884 P.2d 1113 (Colo.1994) (certiorari review by court of appeals pursuant to § 8–43–307, C.R.S. (1994 Cum.Supp.) denies workers' compensation claimants the right of access to the courts).

■ Equal protection of the laws requires that the government treat similarly situated persons in a similar manner. When governmental action is subjected to an equal protection challenge, the level of judicial scrutiny varies with the type of classification employed and the nature of the right affected. *Tassian v. People,* 731 P.2d 672 (Colo. 1987).

An equal protection challenge to legislation requires application of one of three standards of review, depending on the circumstances in which the challenge arises.

■ If the statutory classification abrogates a fundamental right or establishes a suspect class, the court must apply a strict scrutiny standard of review. Under such a standard, the state has the burden of establishing that the classification serves a compelling governmental interest and that the legislation is necessary for the accomplishment of such purpose. *See Evans v. Romer,* 854 P.2d 1270 (Colo.1993) (*Evans I* ) and *Evans v. Romer,* 882 P.2d 1335 (Colo.1994) (*Evans II* ) (Equal Protection Clause protects fundamental right to participate equally in the political process and state constitutional amendment which infringes on this right by "fencing out" an independently identifiable class of persons is subject to strict scrutiny).

■ An intermediate level of review is required if the classification affects a quasi-suspect class. *See Willer v. City of Thornton,* 817 P.2d 514 (Colo.1991).

■ If the statutory classification does not infringe on a fundamental right or adversely affect a suspect or quasi-suspect class, a rational basis standard of review controls. Under such a standard, equal protection of the laws is satisfied if the statutory classification has a reasonable basis in fact and bears a reasonable relationship to a legitimate governmental interest. The party challenging the legislation must establish beyond a reasonable doubt that the statutory classification is unreasonable or, if reasonable, is unrelated to any legitimate governmental objective. *See Lee v. Colorado Department of Health,* 718 P.2d 221 (Colo.1986).

■ Here, plaintiffs claim the Act infringes upon a fundamental right, namely, the right of access to the courts to remedy injuries suffered. However, the right of access to the courts has not been recognized as a fundamental right by our supreme court. *See State Farm Mutual Automobile Insurance Co. v. Broadnax,* 827 P.2d 531 (Colo. 1992) (court applied rational basis test in analyzing right of access to courts). In fact, the constitutional right to access does not create a substantive right at all. It provides a procedural right to a judicial remedy whenever the General Assembly creates a substantive right under Colorado law. Thus, the "access right" guarantees access to the

courts when an individual has a viable claim for relief. *In re Marriage of Hartley*, 886 P.2d 665 (Colo.1994).

Further, in *Dove v. Delgado, supra*, our supreme court held that the right to recover damages in tort is not a fundamental right.

■ Since there is no fundamental right involved, nor a classification triggering an intermediate standard of review, the rational basis standard of review applies. *See Tassian v. People, supra.*

Applying such a standard, we conclude that the Act does not violate plaintiffs' right to equal protection. In the Immunity Act's declaration of policy, the General Assembly recognized that the doctrine of sovereign immunity is in some instances an inequitable doctrine, but stated "that unlimited liability could disrupt or make prohibitively expensive the provision of ... essential public services and functions." The General Assembly also recognized that taxpayers would bear the fiscal burdens of unlimited liability and that limitations on liability are necessary to protect taxpayers against excessive fiscal burdens. Section 24–10–102, C.R.S. (1988 Repl. Vol. 10A). *See Jenks v. Sullivan*, 826 P.2d 825 (Colo.1992).

In accordance with this declaration of policy, our supreme court has consistently held that the Immunity Act is constitutional and that classifications restricting recovery by various tort victims bear a rational relationship to the legitimate state interest of fiscal certainty. *State v. DeFoor*, 824 P.2d 783 (Colo.1992) (limitations on damages for the state's liability are rationally related to the legitimate state interests of fiscal solvency and providing essential services while minimizing taxpayer burdens); *Lee v. Colorado Department of Health, supra* (recovery limitations in Immunity Act are reasonably related to the governmental objective of providing fiscal certainty in carrying out the manifold responsibilities of government).

Here, the General Assembly specifically included the CCIA within the provisions of the Act, thereby conferring upon the CCIA sovereign immunity for all tort claims brought against it, unless the claim falls within one of the exceptions enumerated in the Act. The General Assembly also included the CCIA in the risk management fund and provided that judgments against the CCIA are to be paid from that fund. Sections 8–45–101, et seq., C.R.S. (1994 Cum. Supp.) & 24–10–1510, C.R.S. (1988 Repl.Vol. 10A). In doing so, the General Assembly protected the CCIA from unforeseen and unlimited tort judgments that could potentially have adverse effects on the risk management fund.

Because the provisions of the Act giving the CCIA sovereign immunity from tort claims are rationally related to the legitimate state interest of fiscal certainty, we reject plaintiffs' claim that the Immunity Act denies them equal protection.

Similarly, we reject plaintiffs' contention that the Immunity Act denies them equal protection because it creates an arbitrary classification in which the defendants are immune from tort liability, but private insurance companies may be held liable for injuries which lie in tort. *See Lee v. Colorado Department of Health, supra* (court rejected claim that the Immunity Act's recovery limitations violate equal protection by effectuating an arbitrary classification between public entities with limited liability and private tortfeasors responsible for all harms caused by their negligence).

### B.

### Due Process

■ Plaintiffs next claim they have a property right to damages for their injuries that cannot be taken away without due process of law. We reject this contention.

■ The due process guarantee of the Colorado Constitution set out in Colo. Const. art II, § 25 is applicable to rights, not remedies. *State v. DeFoor, supra.* In order to meet a challenge against the Immunity Act based on due process, the state only need show that the challenged provision is rationally related to a legitimate state purpose. *See Colorado Society of Community & Institutional Psychologists, Inc. v. Lamm*, 741 P.2d 707 (Colo.1987).

A resident of a state has no constitutional right to sue the state or its political subdivisions. However, the state may permit a resident to bring an action against the state, and the state has the full authority to specify what actions may be brought against it and its subdivisions. The right to maintain an action against a governmental entity is derived from statutes. *See Fritz v. Regents of University of Colorado,* 196 Colo. 335, 586 P.2d 23 (1978).

Here, the General Assembly specifically included the CCIA within the sovereign immunity protections of the Act, thereby barring plaintiffs from bringing a tort claim against CCIA. As previously determined, this grant of sovereign immunity bears a rational relationship to the legitimate state interest of fiscal certainty. Thus, plaintiffs' contention that the Act violates their rights to due process is without merit.

## II.

Finally, plaintiffs claim the trial court erred in finding that defendants are not "persons" within the meaning of 42 U.S.C. § 1983 (1988), and in dismissing their § 1983 claim. Again, we disagree.

To state a claim actionable under 42 U.S.C. § 1983, plaintiffs must allege facts demonstrating that: (1) a person has deprived them of a right secured by the "Constitution and laws" of the United States and (2) the deprivation occurred "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." *See State v. DeFoor, supra.*

In *Will v. Michigan Department of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the United States Supreme Court held that states, state officials sued in their official capacity, and governmental entities that are considered "arms of the State" are not "persons" within the meaning of § 1983. Thus, such entities cannot be sued for monetary damages arising from alleged conduct which deprives a plaintiff of his or her civil liberties. However, they may be sued for prospective injunctive relief. *See Bannister v. Colorado Supreme Court Disciplinary Counsel,* 856 P.2d 79

(Colo.App.1993); *National Camera, Inc. v. Sanchez,* 832 P.2d 960 (Colo.App.1991).

In contrast, counties and municipal corporations are "persons" under § 1983 and may be sued for damages. *See Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Whether a governmental entity is an "arm of the state" is determined by balancing the entity's independent powers with those entirely dependent on the state. If the entity is the state's alter ego, dependent entirely on the state for the funds and resources to respond to a suit for damages, it is equivalent to the state. *Wigger v. McKee,* 809 P.2d 999 (Colo.App.1990). *See also Austin v. State Industrial Insurance System,* 939 F.2d 676, 678 (9th Cir.1991) ("A central concern is whether a judgment against the entity named as a defendant would impact the state treasury.").

Here, plaintiffs assert that defendants are not an "arm of the state" because they are not dependent on the state for funds and because any monies due would come out of defendants' own funds.

As noted earlier, the CCIA is a hybrid entity. It is specifically designated as a political subdivision of the state and the CCIA board is appointed by the governor of Colorado with consent of the senate. Section 8–45–101, C.R.S. (1994 Cum.Supp.) It is audited annually by an auditor or auditing firm retained by the state auditor. And, the audit must be transmitted to the governor and the General Assembly. Section 8–45–121, C.R.S. (1994 Cum.Supp.).

Further, although the funds collected by CCIA consist of premiums, those funds are held in trust by the state treasurer who is responsible for investing the funds. Sections 8–45–118 and 8–45–120, C.R.S. (1994 Cum. Supp.).

CCIA is not an agency of the state government for most purposes, but it *is* a state agency in two important respects: for purposes of the Immunity Act and the risk management fund. Section 8–45–101, C.R.S. (1994 Cum.Supp.). *See also* § 24–30–1510(3)(a), C.R.S. (1988 Repl.Vol. 10A) (ex-

penditures are to be made out of the risk management fund to pay liability claims and expenses related thereto brought against the state, its officials, or its employees pursuant to the Immunity Act). And, because § 8–45–101 specifically includes the CCIA in the Immunity Act and within the risk management fund, claims made against defendants are paid out of the risk management fund. Thus, claims against the CCIA could have an impact on the state treasury.

At least two courts have analyzed the status of hybrid state agencies analogous to CCIA and have rejected arguments similar to those made by plaintiffs here.

In *Esparza v. Valdez,* 862 F.2d 788 (10th Cir.1988), *cert. denied,* 492 U.S. 905, 109 S.Ct. 3214, 106 L.Ed.2d 565 (1989), plaintiffs sought wrongfully withheld past unemployment benefits. There, as here, plaintiffs contended that the defendant could be sued because: (1) Colorado's employment compensation fund was a special, segregated fund that was separately financed; and (2) the state was insulated from liability for amounts exceeding the resources of the fund.

The United States Court of Appeals for the Tenth Circuit disagreed and held that their request was tantamount to a request for a damage award against the state. As such, the relief was barred by the Eleventh Amendment which, with few exceptions, prohibits federal courts from entertaining suits brought by a private party against a state. *See Dube v. State University of New York,* 900 F.2d 587 (2d Cir.1990). In rejecting plaintiffs' argument, the court stated:

> [E]ven if we could find little or no fiscal impact on the state from plaintiffs' suits, the financial impact on the state does not appear to be the predominant factor.... [W]hen money damages are awarded against the state, the state as an entity is being subject to suit.
>
> . . . .

*Thus, no matter what fund a judgment for past damages comes from, it is still a damage award against the state.*

*Esparza v. Valdez, supra,* 862 F.2d at 795 (emphasis added).

We recognize that the Eleventh Amendment does not apply to suits against the state brought in state court. Nevertheless, federal precedent is apt because a similar analysis is used in determining whether a plaintiff's allegation is against a "person" and therefore permitted, if other statutory criteria are met; or whether it is against the state or an arm of the state and, therefore, not a "person" for § 1983 purposes. *See Wigger v. McKee, supra.*

Another instructive decision is *Austin v. State Industrial Insurance System, supra.* There, the United States Court of Appeals for the Ninth Circuit concluded that Nevada's State Industrial Insurance System (SIIS) was a "state agency" entitled to Eleventh Amendment immunity and, therefore, not a "person" for the purposes of § 1983. It reached its conclusions by weighing many factors including these: (1) SIIS was subject to the control and review of the governor, the legislature, and other government agencies; (2) the governor of Nevada appoints the board of directors that supervises SIIS; (3) before each legislative session, the board of directors has to report to the governor and legislature about the operations of SIIS; (4) although the funds collected by SIIS consist of the premiums of policyholders and other private payments, those funds are held in trust by the state treasurer; (5) the Nevada Supreme Court had ruled SIIS is a state agency as a matter of state law, *see Northern Nevada Ass'n of Injured Workers v. Nevada State Industrial Insurance System,* 107 Nev. 108, 807 P.2d 728 (1991); and (6) the state has ultimate responsibility for the state insurance fund.

The court stated:

> Taken together, these provisions impose responsibility on the state and its treasurer to assure the integrity and solvency of the Nevada state insurance fund.
>
> . . . .

We cannot say that a monetary judgment against SIIS inevitably would have an impact on the state treasury. However, this disclaimer is not fatal to SIIS's claim of immunity. While a determination that a

judgment would have an impact on the state treasury would lead ineluctably to the conclusion that SIIS is a state agency, the absence of such an impact does not necessarily preclude eleventh amendment immunity. *Austin v. State Industrial Insurance System, supra,* 939 F.2d at 679.

Our statutory scheme also imposes responsibility on the state and its treasurer to assure the integrity and solvency of the CCIA and shares many of the characteristics of Nevada's state insurance fund. Thus, after weighing all relevant factors, we conclude that the CCIA is an "arm of the state." The same is true of each of its predecessors. *See Wigger v. McKee, supra; Austin v. State Industrial Insurance System, supra. See also* 1 M. Schwartz & J. Kirklin, *Section 1983 Litigation: Claims Defenses and Fees,* 8.10 (2d Ed. 1994 Cum.Supp. No. 1).

Contrary to the defendant's contention, we do not view the recent decision of *Denver Area Labor Federation, AFL–CIO v. Meyer,* —— P.2d —— (No. 94CA0319, March 9, 1995), as inconsistent with this conclusion.

There, the salient issue was whether CCIA's funds constituted "public monies" under § 1–45–116(1)(a), C.R.S. (1994 Cum. Supp.) of the Campaign Reform Act. The court, relying upon binding state precedent, determined that such funds were not "public monies" within the meaning of that statute.

Here, however, the issue is whether the CCIA is a "person" or an "arm of the state" within the meaning of the federal civil rights act, 42 U.S.C. § 1983.

In sum, we reject plaintiffs' contention that the CCIA is a "person" within the meaning of 42 U.S.C. § 1983.

We also reject plaintiffs' related argument that the Immunity Act also is contrary to Colo. Const. art. V, § 25, because defendants are "nothing more than an insurance company."

The judgment of dismissal is affirmed.

MARQUEZ and KAPELKE, JJ., concur.