**PUEBLO SCHOOL DISTRICT NO. 70 and Colorado Compensation Insurance Authority, Petitioners,**

v.

**Sandra L. TOTH and the Industrial Claim Appeals Office, Respondents.**

**No. 95CA0189.**

Colorado Court of Appeals, Div. I.

Jan. 25, 1996.

As Modified on Denial of Rehearing May 2, 1996.

Certiorari Denied Oct. 15, 1996.

Colorado Compensation Insurance Authority, Carolyn A. Boyd, Denver, for Petitioners.

Wilcox & Ogden, P.C., Ralph Ogden, Denver, Steven U. Mullens, Colorado Springs, for Respondent Sandra L. Toth.

No Appearance for Respondent Industrial Claim Appeals Office.

Opinion by Judge ROTHENBERG.

In this workers' compensation case, petitioners, Pueblo School District No. 70 and its insurer, the Colorado Compensation Insurance Authority (collectively referred to as the CCIA), seek review of a final order of the Industrial Claim Appeals (Panel) requiring the CCIA to pay a penalty for its delay in reimbursing claimant, Sandra L. Toth, for medical expenses. We affirm.

## I.

Claimant became permanently and totally disabled as a result of two workplace injuries: one in 1985 and another in 1987. As part of the treatment for those injuries, her doctor prescribed over-the-counter pain relievers which she would buy. Her attorney then would submit the receipts to the CCIA for reimbursement under the Workers' Compensation Act.

This practice went on routinely for about five years until April 1991, when claimant sought reimbursement from the CCIA in the amount of $19.63. Although the CCIA admits receiving the bill and admits responsibility for paying it, the sum was not paid to claimant for over two years. As relevant here, Colorado Workers' Compensation Rules of Procedure Rule XIV(6), 7 Code Colo. Reg. 1101-3 (1990), required insurers to pay injured workers' medical bills within 45 days of receipt. Nevertheless, the CCIA did not discuss the bill with claimant, and did not answer three letters from her attorney demanding payment.

Because of the delay, claimant requested a hearing and asked that penalties for nonpayment be imposed upon the CCIA pursuant to § 8–53–116, C.R.S. (1986 Repl.Vol. 3B) (repealed and reenacted with changes at § 8–43–304, C.R.S. (1995 Cum.Supp.)).

At the time of the hearing, the ALJ noted that the bill remained unpaid. The CCIA claims adjuster testified that: (1) the claimant's receipt was received on April 1, 1991, but it was virtually illegible; (2) another bill was received on the same day which was paid, but receiving two bills on the same day confused the adjuster; and (3) it was the adjuster's fault that the bill had not been paid.

The ALJ found no adequate explanation as to why the CCIA had not responded to the three demand letters, or why it still had not paid the bill as of the hearing date in 1993. Finding no legitimate excuse for the CCIA's failure to pay, the ALJ imposed a fine of $10 per day for the 605 day delay.

The CCIA appealed the ALJ's ruling to the Panel, successfully asserting that under Colorado Workers' Compensation Rules of Procedure Rule VIII(O), only the director had jurisdiction to impose the penalties. On remand from the Panel, a second hearing was held and a different ALJ found the bill was paid 645 days late without excuse. The ALJ again recommended that the director impose penalties of $10 per day for the 645 days. The director adopted the ALJ's recommendation and imposed a penalty of $6450 under former § 8–53–116. The Panel affirmed.

## II.

The CCIA first contends that the assessment of penalties is not supported by the applicable law. We disagree.

Section 8–53–116 stated, in pertinent part:

Any ... person who violates any provision of ... this title, or does any act prohibited thereby, or fails or refuses to perform any duty lawfully enjoined within the time prescribed by the director or panel ... or fails, neglects, or refuses to obey any lawful order made by the director or panel ... shall be punished by a fine of not more than one hundred dollars for each such offense.

Section 8–53–117, C.R.S. (1986 Repl.Vol. 3B) further provided that each day of noncompliance constituted a separate offense.

■ The imposition of a penalty under former § 8–53–116 is governed by an objective standard of negligence. As such, it is measured by the reasonableness of the insurer's action and does not require knowledge that the conduct was unreasonable or in bad faith. *Colorado Compensation Insurance Authority v. Industrial Claim Appeals Office,* 907 P.2d 676 (Colo.App.1995). Thus, penalties may be assessed against an insurer neglecting to take action that a reasonable insurer would take to comply with either a lawful order or a provision of the Workers' Compensation Act.

Here, the CCIA claims its actions were objectively reasonable—that is, a reasonable insurer under similar circumstances would have responded the same way. However, the CCIA offers no explanation for the two-year delay other than summarily to assert that its adjuster's difficulty reading the receipt and the confusion with another claim letter were a reasonable response under the circumstances.

Rule XIV(6) established the standard for adjusting claims for payment of medical expenses in this case. That rule required the insurer, within 45 days after receipt of a bill, to send certain information to the provider or the injured employee if payment was not possible within that period. Such information included a statement giving the reason for the delay of payment and the date when payment was expected.

It is undisputed that the CCIA took no action in compliance with Rule XIV(6). And, despite three written requests for payment between April 1991 and June 1992, petitioners did not advise claimant that the unpaid bill was illegible. As noted, the bill inexplicably remained unpaid at the time of the February 1993 hearing.

Based upon this evidence, the Panel concluded as a matter of law that the CCIA's conduct was not reasonable and that penalties were imposed appropriately for petitioners' failure to comply with the provisions of the Workers' Compensation Act and the rules of procedure. We perceive no error in this conclusion.

■ Even if the matter may not be resolved as a matter of law, we must sustain a penalty so long as it is supported by substantial evidence, based on a reasonable reading of the entire record. *Ace West Trucking, Inc. v. Public Utilities Commission,* 788 P.2d 755 (Colo.1990). Such is the case here.

## III.

The CCIA next contends that § 8–53–116 violates its right to due process. We are not persuaded.

■ Initially, we note claimant's argument that, because the CCIA is a government agency and an arm of the State of Colorado, it is not a "person" under the Fourteenth Amendment. Thus, claimant asserts, the CCIA enjoys none of the benefits of the Fourteenth Amendment including its due process protection, and therefore it lacks standing to make this argument. *See* § 8–45–101(*l*), 3B C.R.S. (creating the CCIA as a political subdivision of the state); *Williams v. Mayor and City Council of Baltimore,* 289 U.S. 36, 53 S.Ct. 431, 77 L.Ed. 1015 (1933) (political subdivisions of a state are not "persons" protected by the Fourteenth Amendment); *Simon v. State Compensation Insurance Authority,* 903 P.2d 1139 (Colo.App. 1994), *cert. granted,* October 10, 1995 (the CCIA is "an arm of the state" and therefore not a "person" within the meaning of 42 U.S.C. § 1983). *But Cf. Denver Area Labor Federation v. Meyer,* 907 P.2d 638 (Colo.App. 1995), *cert. granted,* November 28, 1995 (Campaign Reform Act's prohibition against spending of "public moneys" by political subdivisions does not apply to the CCIA).

The CCIA concedes a number of courts have recognized the principle that a political subdivision does not have the right to assert a substantive due process claim. Nevertheless, it claims entitlement to assert a procedural due process claim based upon *Colorado Springs v. Board of County Commissioners,* 895 P.2d 1105 (Colo.App.1994) and *City and County of Denver v. Eggert,* 647 P.2d 216 (Colo.1982). We do not agree.

In *Colorado Springs v. Board of County Commissioners, supra,* 895 P.2d at 1119, the right to procedural due process was not implicated. And, while the statement was made that "municipal corporations are not barred from asserting procedural due process claims," it was in the form of dictum.

Nor does *Eggert* support the CCIA's proposition. There, Arapahoe County commissioners issued notice of a hearing under the Solid Wastes Act "to allow information regarding landfill operations to be made public." *City and County of Denver v. Eggert, supra,* 647 P.2d at 219. The City and County of Denver was unaware that one possible result of the hearing would be a cease and desist order against Denver for its chemical and hazardous waste disposal operation and did not participate in the hearing.

The supreme court set aside the cease and desist order, after concluding that the county commissioners' action was quasi-judicial and that Denver *and other private parties* were not given adequate notice and therefore were denied due process. The issue of whether a municipal corporation such as Denver was entitled to due process was not directly addressed. Rather, the court assumed that due process was violated by the inadequate notice:

> Under the Solid Wastes Act, quasi-judicial action by county commissioners must be preceded by reasonable notice. . . .
> Individual license or permit decisions involving adjudicative facts are subject to basic due process guarantees. . . . 'This embodies adequate advance notice and an opportunity to be heard prior to state action resulting in deprivation of a significant property interest.'

*City and County of Denver v. Eggert, supra,* 647 P.2d at 223–24.

Here, no license or permit decisions are involved, no private parties are involved, no statute required notice or a hearing, and the CCIA was not deprived of a significant property interest. We thus conclude that *Eggert* is inapposite.

Alternatively, the CCIA contends that when it acts in its corporate capacity, it enjoys the same standing and procedural due process protection as any other insurance corporation. *See Dye Construction Co. v. Industrial Commission,* 678 P.2d 1066 (Colo. App.1983) (recognizing the CCIA's corporate essence); *Grosjean v. American Press Co., Inc.,* 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936) (corporations are persons which enjoy due process rights under the Fourteenth Amendment).

We are not persuaded by the CCIA's argument that its status as a corporation confers it with standing to assert a due process claim. First, the CCIA is not merely a corporation. It has been recognized as a hybrid entity and an "arm of the state" created by statute which may not be sued for damages, just as governmental entities may not be sued. *Simon v. State Compensation Insurance Authority, supra,* 903 P.2d at 1145–47.

Secondly, it is irrelevant that the CCIA engages in a function in which private corporations also engage. Many political subdivisions, such as municipalities providing utility services, engage in such functions. This does not affect their governmental and political character. *See City of Trenton v. State of New Jersey,* 262 U.S. 182, 43 S.Ct. 534, 67 L.Ed. 937 (1923).

■ Although we conclude that the CCIA lacks standing, resolution of this issue is not critical to our disposition of this case. Even if we were to assume the CCIA were entitled to procedural due process protection, we conclude that any procedural due process rights the CCIA might have were not violated by the director's decision to fine it $6450.

■ Due process is a flexible standard that calls for such procedural protections as the particular situation demands. *Sears, Roebuck & Co. v. Baca,* 682 P.2d 11 (Colo. 1984).

Here, Rule XIV(6) gave petitioners notice of the standard of conduct that was expected of them. In addition, the CCIA had an opportunity to present evidence to the ALJ concerning the reasonableness of its actions. Thus, it was afforded adequate procedural protections. *Cf. Raymond Lloyd Co. v. District Court,* 732 P.2d 612 (Colo.1987) (statute imposing penal sanction without providing an

opportunity for a hearing violated right to due process).

Furthermore, the ALJ submitted a written recommendation for penalties to the director and the ALJ's assessment of penalties thus was subject to further evaluation by the director. This extra tier of review provided the framework to maintain consistency and relative fairness in the level of penalties imposed.

Contrary to the CCIA's contention, *Honda Motor Co. v. Oberg*, 512 U.S. 415, 114 S.Ct. 2331, 129 L.Ed.2d 336 (1994), does not require a different result. There, the Court held that a substantial evidence review of penalties failed to comport with due process. However, in that case, the relevant statute provided for a new trial upon appellate review only if there was *no* evidence to support any punitive damages, but there was no procedure for appellate review if the only basis for relief was the amount of punitive damages awarded. *Oberg* held that such a truncated procedure is unconstitutional.

However, we do not follow the Oregon procedure struck down in *Oberg, supra.* Rather, under § 8–53–116 and the then applicable regulations, when a penalty award or the amount of such award was in question, there was a review first by the director, then by the Panel, and then by this court.

Accordingly, we conclude that any right to procedural due process to which the CCIA was entitled was not violated.

## IV.

■ Lastly, the CCIA contends that imposition of the $6540 fine violates the Eighth Amendment and Colo. Const. art II, § 20. Again, claimant asserts that the CCIA lacks standing to raise this argument, and also that the excessive fines clauses only apply to criminal proceedings.

The CCIA's counter arguments, though not elucidated in this particular order, are that: (1) the Eighth Amendment's excessive fines clause is incorporated through the Fourteenth Amendment; (2) the federal and state excessive fines clauses apply to corporations such as the CCIA; and (3) the excessive fines clauses do apply in civil proceedings. Thus, again, the CCIA relies upon its status as a corporation as the basis for its standing.

Both the Eighth Amendment and Colo. Const. art. II, § 20 state: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Since the rights under Colo. Const. art. II, § 20, have not been treated more expansively than those under the identical clause of the United States Constitution, we look to federal authority for guidance.

The excessive fines clause of the Eighth Amendment has not been held specifically applicable to the states by virtue of the Fourteenth Amendment's due process clause. Nor has the Supreme Court answered the question of whether the Eighth Amendment applies to corporations as well as individuals. *See Browning–Ferris Industries v. Kelco Disposal*, 492 U.S. 257, 276 n. 22, 109 S.Ct. 2909, 2920 n. 22, 106 L.Ed.2d 219, 239 n. 22 (1989) ("We shall not decide whether the Eighth Amendment's prohibition on excessive fines applies to the several states through the Fourteenth Amendment, nor shall we decide whether the Eighth Amendment protects corporations as well as individuals.").

Nevertheless, since the Supreme Court has assumed, without deciding, that the excessive fines clause applies to the states, we also assume its applicability here. *See Schilb v. Kuebel*, 404 U.S. 357, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971).

The Eighth Amendment was designed to protect those convicted of crimes. *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). *See Browning–Ferris Industries v. Kelco Disposal, supra*, 492 U.S. at 262–263, 109 S.Ct. at 2913, 106 L.Ed.2d. at 230 ("Given that the Amendment is addressed to bail, fines, and punishments, our cases long have understood it to apply primarily, and perhaps exclusively, to criminal prosecutions and punishments").

In 1993, however, for the first time the Court ruled that the excessive fines clause is not limited in application to criminal cases. Rather, it applies in civil cases where the government seeks, at least in part, to punish

a party. *Austin v. U.S.*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). Accordingly, we reject claimant's position that the Eighth Amendment excessive fines clause necessarily is inapplicable in this civil matter.

Nevertheless, we are unaware of any definitive federal precedent supporting the CCIA's proposition that the excessive fines clause was meant to be used by the government against the government. On the contrary, the Supreme Court has described the Eighth Amendment as a check on the ability of the government selectively and irregularly to impose sanctions upon *individuals* whom it does not like. *Browning–Ferris Industries v. Kelco Disposal, supra.* But see *Browning–Ferris Industries v. Kelco Disposal, supra,* 492 U.S. at 284–285, 109 S.Ct. at 2925, 106 L.Ed.2d at 244–245 ("If a corporation is protected by the Due Process clause from overbearing and oppressive monetary sanctions, it is also protected from such penalties by the Excessive Fines Clause.") (O'Connor, J., concurring in part and dissenting in part).

■ Therefore, we hold that the CCIA, as an arm of the state, lacks standing to challenge the constitutionality of a fine imposed by the state government under the excessive fines clauses of either the United States or Colorado Constitutions.

■ Furthermore, even if we assumed the CCIA has standing to challenge the fine under the excessive fines clause, we would conclude that the fine imposed here is not excessive.

In *Austin v. United States, supra,* the Supreme Court refused to establish a specific test to determine whether a civil forfeiture was constitutionally excessive. Rather, it left to other courts that determination on a case by case basis. *See United States v. Bieri,* 21 F.3d 819 (8th Cir.1994), *cert. denied* —— U.S. ——, 115 S.Ct. 208, 130 L.Ed.2d 138 (1994).

■ Once the right to impose a fine has been proven, the burden of showing that the fine is "grossly disproportionate" shifts to the party upon whom the fine is levied, here, the CCIA. *Cf. United States v. Alexander,* 32 F.3d 1231 (8th Cir.1994).

Applying those principles here, we first conclude that the initial entitlement to a fine was proven. In fact, it was mandated by the statute at a daily rate of up to $100 per offense and, again by statute, there were 645 separate offenses.

We also conclude that the CCIA has failed to meet its corresponding burden of showing the fine was grossly disproportionate. While concededly the financial harm suffered by this one claimant may have been relatively small, the ALJ nevertheless took into account the CCIA's repeated and stubborn refusal to respond to her attorney's three letters and the fact that the bill remained unpaid even at the 1993 hearing. Further, the fine was far below the amount that would have been permissible under the statute.

When viewed in context, the amount imposed by the director was purposefully designed to get the CCIA to take notice and reflect upon its course of conduct, without being unduly heavy-handed. Therefore, we reject the CCIA's contention that the fine imposed upon it violated the excessive fines clauses of the Colorado or United States Constitutions.

*Order affirmed.*

METZGER and CRISWELL, JJ., concur.